UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN A. WICKS, CAROLINE | : | |
| WICKS, WILLIAM BLAIR, and | : | NO.: 4:09-CV-01084 |
| GEORGE BIDLESPACHER, | : | |
| Plaintiffs | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| v. | : | |
| | : | |
| DUDLEY ANDERSON, KENNETH | : | |
| BROWN, LYCOMING COUNTY, | : | |
| KEVIN WAY. WILLIAM BURD, and | : | |
| DANIEL MATHERS, | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

Pursuant to an Order entered on August 3, 2010 (Doc. 46), Honorable Judge

Christopher C. Conner referred defendants' motions to dismiss (Docs. 33, 34) to the

undersigned Magistrate Judge for the purpose of preparing a Report & Recommendation.

## I. Background

The various plaintiffs, in their amended complaint (Doc. 32), claim against the

defendants for violations of their First and Fourteenth Amendment rights. Despite being

amended, which is supposed to result in improvement, the complaint remains nearly

inscrutable; what follows is the nearest thing to sense that can be made of it.

### (A) Facts of the case

Because this case is before the Court on a motion to dismiss, the well-pleaded facts

in plaintiffs' complaint are taken as true, and presented here in a light most favorable to

plaintiffs. The complaint contains three distinct narratives, unrelated except in that each has some link to defendant Judge Dudley Anderson.


(1) The Wickses

The complaint begins telling its story *in medias res*. On or about June 27, 2007, plaintiff Steven Wicks learned from his attorney at the time, Zeigler, that "his files or parts of files" for cases 00194-01336 and 97-20770 were missing from "the Courthouse." (Doc. 32, ¶ 14.) Which courthouse is not specified. A $64,000 judgment[1] that Steven had filed in the office of defendant Prothonotary William Burd was missing; this judgment was against Steven's father Stanley Wicks, who allegedly "was involved in business relationships with Judge Anderson via a third person, namely Bobby Roles." (*Id.* ¶ 18). At an unspecified time, Zeigler told Steven that he had traced the missing files to the office of defendant Judge Kenneth Brown. (*Id.* ¶ 21.) Judge Brown's secretary told Zeigler on an unknown date that the files were in the judge's office and that she had seen them there, but did not know where they presently were. (*Id.* ¶ 22.) Presumably later, but how much later, no one knows, Zeigler told Steven that "he would not push this fact because he liked the secretary and would do nothing to get her in trouble." (*Id.* ¶ 23.) The files remain, Steven avers, "missing," despite his efforts to recover them. (*Id.* ¶ 24.)

Parts of plaintiff Caroline Wicks' file were also missing, case 00194 being most directly affected. (*Id.* ¶ 15.) The only parts of the file that the complaint specifically identifies are "[Judge] Dudley Anderson's agreement to recuse himself, and the petition therefore," which remain missing. (*Id.* ¶ 16.)

---

[1] In each brief in opposition (Doc. 41, at 4; Doc. 42, at 4), plaintiffs assert that the judgment was $34,000.

(2) William Blair

William Blair is involved in litigation with his brother regarding the dissolution of a "valuable jewelry business" in Lycoming County. (*Id.* ¶ 30.) The case is number 09-01019. (*Id.*) The building in which the business is located is in the name of one of defendant Judge Anderson's business partners, Roger Jaret, who is said to be "in a real estate company together" with Judge Anderson and defendant Daniel Mathers. (*Id.* ¶¶ 31, 38.) Blair was "successful" in the case while Judge Nancy Butt presided, but then defendant Court Administrator Kevin Way transferred the case to Judge Anderson. (*Id.*)

On September 9, 2009, Judge Anderson held a hearing; afterwards, he issued a bench order "requiring Bill Blair's brother to do certain things [that] Bill Blair's brother later refused to do." (*Id.* ¶ 34.) This hearing was never docketed, and Blair's request for a transcript of the hearing has not been satisfied. (*Id.* ¶¶ 34, 39.) When, on some unknown date, Blair sought a copy of the written order, he was told by someone, although the complaint does not say whom, that "the early papers of his files" were missing from Prothonotary Burd's office. (*Id.* ¶ 36.) Allegedly, Judge Anderson refused to issue a written order "because 'the papers were lost' including a transcript of the September 9, [2009] hearing" (*id.* ¶ 37) although there is no indication of who said when or where that "the papers were lost."

According to the complaint, a review of the docket sheet in case 09-01019 reveals that Judge Gray held an ex parte hearing on November 24, 2009 "purporting to be a hearing on some sort of temporary injunction." (*Id.* ¶ 40.)[2] Neither Blair nor his attorney were served with notice of the hearing. (*Id.* ¶ 41.) During the hearing, Judge Gray issued an order granting "relief" of an unspecified sort and set November 30, 2009 as the date

---

[2]Although the complaint's reference to the docket sheet indicates that plaintiffs have access to a copy of the docket sheet, plaintiffs declined to attach a copy to the complaint or any related briefing.

for a hearing before Judge Anderson. (*Id.*) Blair's attorney did not learn of the order under March 1, 2010, even though the order "clearly indicates that Blair's attorney was copied" on it.[3] (*Id.*)

Blair has since learned from a court-ordered evaluation of the jewelry business's value that the store has been, in the terms of the complaint, "cleared out." (*Id.* ¶ 45.)


### (3) George Bidlespacher

Plaintiff Bidlespacher, a landowner in Lycoming County, "awoke one day" at an unspecified point in time "to find that he was the subject of litigation by the owner of the adjacent parcel." (*Id.* ¶¶ 47, 49.) The adjacent landowner sought a right-of-way across Bidlespacher's land. (*Id.* ¶¶ 48, 50.) Bidlespacher's case was "originally"—at, again, some unspecified time—before Judge Nancy Butts, and Bidlespacher was satisfied with the way the case proceeded before her. (*Id.* ¶ 50–51.)

After the passage of an unknown number of days, weeks, or months, Bidlespacher's case was transferred to defendant Judge Anderson, who chose defendant Daniel Mathers to be the chairman of a Board of View that was in some way responsible for making certain findings regarding the sought-after right-of-way for the parcel of land adjoining Bidlespacher's. (*Id.* ¶ 52.) Judge Anderson "is refusing" over an unknown time frame "to even hear" the ten exceptions that Bidlespacher's attorney filed to Chairman Mathers' findings. (*Id.* ¶ 53.)

---

[3]Although the complaint's reference to the order indicates that plaintiffs have access to a copy of the order, plaintiffs declined to attach a copy to the complaint or any related briefing.

*(B) Procedural history*

Plaintiffs Steven A. Wicks and Caroline Wicks initiated this action by filing a complaint in federal court on June 8, 2009. (Doc. 1.) Two months passed with little activity in the case. On August 12, defendants Lycoming County and William Burd filed a motion to dismiss (Doc. 10); on August 18, defendants Judge Kenneth Brown, Judge Dudley Anderson, and Kevin Way filed a motion to dismiss as well (Doc. 13). After briefing from all parties (Docs. 11, 18, 20, 21), the Court granted both motions on February 2, 2010 (Doc. 27), dismissing the claims against all defendants. In the memorandum accompanying the order of dismissal, the Court noted that "any amended complaint must stand on its own. It must be a completely new pleading that states all of [plaintiffs'] claims. Any amended complaint cannot be a supplement to their original one. In other words, the Plaintiffs must start over." (*Id.* at 11.)[4]

The Wickses filed an amended complaint (Doc. 32) on March 1, 2010, which purported to add several new parties: William Blair and George Bidlespacher as plaintiffs and Daniel Mathers as a defendant. Plaintiffs neglected to file a motion for joinder of parties under Federal Rule of Civil Procedure 20, instead simply adding new names to the caption and body of the amended complaint. There is no indication that defendant Mathers was ever served with a copy of the summons or the complaint, nor has he made any voluntary appearance.

On March 12, defendants Burd and Lycoming County filed a motion to dismiss (Doc. 33); on March 18, Brown, Anderson, and Way filed another (Doc. 34). All defendants failed to meet the fourteen-day filing deadlines of Local Rule 7.5 for briefs in

---

[4] In plaintiffs' introductory statement to their complaint—not captioned as an amended complaint—they state: "Plaintiffs, though unsure of what 'supplement: [sic] means exactly[,] have started over. Consequently plaintiffs respectfully request that the original 'Wicks' complaint be incorporated by reference if permitted." This request is denied.

support of motions to dismiss. In late March and early April, the Court sua sponte granted extensions of time for filing while also ordering such briefs to be filed. (Docs. 35, 36.) Defendants did eventually file briefs in support (Docs. 37, 38) and plaintiffs filed briefs in opposition (Docs. 41, 42), although only the motion of March 12 has a related reply brief on the docket (Doc. 44). All filing deadlines for the pending motions having passed, the motions are ripe for adjudication.

## II. Standard of Review

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pleaded facts, but rather tests the legal foundation of the plaintiff's claims. *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989).

The Supreme Court recently abrogated its longstanding decision in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As a result of *Twombly*, plaintiffs were required to nudge their claims

"across the line from conceivable to plausible." *Id.* at 570. To state a claim that satisfies Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 555. "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555 n.3). According to this standard, a court may dismiss a complaint if it fails to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Moreover, the Court's more recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), held that the pleading requirements of Rule 8 mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

**III. Discussion**

The amended complaint contains four counts. Count I, by the Wickses against Brown, Burd, and Way, alleges violation of the Wickses' First Amendment right to access the courts. Count II, by Blair against Anderson, Burd, and Way, alleges a similar violation of Blair's right to access the courts. Count III, by Bidlespacher against Anderson and Mather, alleges violations of Bidlespacher's First Amendment right to access the courts

and his Fourteenth Amendment right to due process. Count IV, by all plaintiffs against Lycoming County,[5] avers a custom of denying certain citizens access to the local court system in violation of the First Amendment. Following a discussion of procedural matters and immunity, these four counts will each be addressed in turn.

### (A) Procedural matters

### (1) Joinder under the Federal Rules

Federal Rule of Civil Procedure 20(a) allows plaintiffs to be joined as parties to an action if the plaintiffs' claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and there is at least one question of law or fact common to all plaintiffs. Fed. R. Civ. P. 20(a). Improper joinder of plaintiffs is not a ground for dismissal; if a plaintiff is improperly joined, the court may drop the party or sever the claims. Fed. R. Civ. P. 21; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 n.5 (3d Cir. 2009) (discussing permissive joinder and remedial action for improperly joined parties). "Dropping" a defendant results in dismissal of the defendant without prejudice; "severing" a claim results in "the suit simply continu[ing] against the severed defendant in another guise." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (citing, *e.g.*, *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.3d 1065, 1068 (3d Cir. 1979); *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999)).

A plaintiff may seek to add additional plaintiffs to an action only by amending the complaint. *Smith v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 242–43 (E.D. Mo. 2004) (citing Fed R. Civ. P. 15; 4 James Wm. Moore et al., Moore's Federal Practice § 20.2[2][a][ii] (3d ed. 2004)). The joinder of parties not necessary to an

---

[5] Count IV states that the plaintiffs' claim is also against the 29th Judicial District of Pennsylvania, but the 29th Judicial District is not a party to this action.

8

action—that is, without whom full relief may still be accorded to the parties—"is not unlimited" under Rule 20(a). 7 Charles Alan Wright et al., Federal Practice & Procedure § 1653 (3d ed. 2010). In this case, then, it is incumbent upon the Court to examine whether the plaintiffs added in the amended complaint are properly joined under the standards of Rule 20(a). *Smith*, 225 F.R.D. at 243.

Even viewing the complaint in a light most favorable to plaintiffs, the relief that they seek cannot be said to "arise out of the same transaction, occurrence, or series of transactions or occurrence." *See Foster v. Wesley Spectrum Servs.*, No. 10-322, 2010 WL 3431103, at *4 (W.D. Pa. Aug. 31, 2010) (citing *Bell v. Lockheed Martin Corp.*, No. 08-6292, 2010 WL 2666950, at *7 (D.N.J. June 23, 2010)) (noting that "logically related" claims may satisfy the "transaction or occurrence" requirement of Rule 20(a)). In *Foster*, the court held that the plaintiffs' allegations of being subjected to "a pattern of discriminatory practices directed at them" satisfied the "transaction or occurrence" requirement. *Id.* The plaintiffs in this case allege no such pattern, nor do the allegations of the complaint hint at one.

Further, the facts pertaining to the Wickses, Blair, and Bidlespacher are all different; that all plaintiffs' allegations have some reference to defendant Judge Anderson is insufficient, as there is no alleged action by Anderson that pertains to all of plaintiffs' claims. Although the plaintiffs each make claims under the First Amendment for violation of their right of court access, these claims are merely parallel: answering the question of whether one plaintiff's right to access the courts was violated will not answer the same question for the others. Because of this lack of any common element among the various claims, the policy of judicial economy underlying Rule 20 would not be served through joinder of plaintiffs Blair and Bidlespacher. *See Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006) (urging liberal interpretation of Rule 20(a) "to promote judicial economy by permitting all reasonably related claims for relief by or against

different parties to be tried in a single proceeding" (quoting *A.I.A. Holdings, S.A. v. Lehman Bros, Inc.*, No. 97-4978, 1998 WL 159059, at *5 (S.D.N.Y. Apr. 1, 1998))); 7 Charles Alan Wright et al., Federal Practice & Procedure § 1652 (3d ed. 2010).

Nonetheless, the Court will decline to drop or sever the claims of Blair or Bidlespacher at present. Defendants issue scant protest against the joinder of these new plaintiffs; the brief supporting Lycoming County and Burd's motion to dismiss refers to "[i]mproperly joined [p]laintiff Blair" (Doc. 37, at 9) and the brief by Brown, Anderson, and Way calls the added plaintiffs' claims "completely unrelated" (Doc. 38, at 3), but none of the defendants considered the matter worthy of a dedicated argument. And, as the following discussion shows, addressing the plaintiffs' contentions in the complaint evinces their lack of merit, upon which basis they may be dismissed.


(2) Lack of service upon Mathers

The Federal Rules of Civil Procedure require that a defendant be served with a copy of the summons and the complaint within 120 days unless the defendant waives service. Fed. R. Civ. P. 4(m). Plaintiffs filed their amended complaint on March 1, 2010, which purported to add Daniel Mathers as a defendant. Under Rule 4(m), Mathers should have been served, or his waiver of service should have been sought and obtained, by June 29, 2010. Neither occurred, and Mathers has neither voluntarily nor specially appeared. Mathers is thus not properly before the Court.

It is therefore recommended that the Court provide plaintiffs with notice under Fed. R. Civ. P. 4(m) that service must be made on Mathers within a specified period of time or their complaint against him will be dismissed.

*(B) Judicial and quasi-judicial immunity*

Defendants Brown and Anderson, both Pennsylvania judges, and Way, Court Administrator of Lycoming County, have claimed judicial and quasi-judicial immunity against plaintiffs' claims. The question of immunity is a threshold issue that must be resolved before proceeding to the substance of the complaint; if a defendant is entitled to immunity, it operates as an absolute bar against a given claim. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (describing absolute immunity as "an entitlement not to stand trial under certain circumstances" and recognizing that immunity is "effectively lost if a case is erroneously permitted to go to trial").

(1) Judicial immunity

Judges are immune from suit under § 1983 for damages arising from their judicial acts. *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000) (citing, *e.g.*, *Mireles v. Waco*, 502 U.S. 9, 9 (1991)). A two-part inquiry determines the applicability of judicial immunity.

First, a judge enjoys no immunity from liability for "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* (quoting *Mireles*, 502 U.S. at 11). The factors that determine whether an act is "judicial" relate to "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). In other words, the crucial distinction is between "'truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).

11

Second, a judge is not entitled to immunity for acts taken in the "clear absence of all jurisdiction"; however, an act taken "merely in 'excess of jurisdiction'" is still protected by immunity. *Id.* (quoting *Stump*, 435 U.S. at 356 n.6).

### (a) Defendant Judge Brown

In the present case, defendant Brown cannot be said to be entitled to judicial immunity for the simple reason that the complaint makes no allegations that Brown committed any acts. Although Brown is named as a defendant, the closest that the complaint gets to alleging an action by Brown is in paragraph 21, which alleges that certain files were in Brown's office. (Doc. 32, ¶ 21.) But the complaint does not say that Brown *did* anything, a glaring omission that, inexplicably, Brown's counsel failed to note in any filing on Brown's behalf.

### (b) Defendant Judge Andersron

In the portions of the complaint that contain relevant allegations, defendant Anderson is alleged to have issued a bench order mandating certain actions by plaintiff Blair's brother. Anderson refused to issue a written order. In a separate matter, Anderson appointed defendant Mathers to be chairman of a Board of View in the context of a case involving plaintiff Bidlespacher. Anderson "is refusing" to hear exceptions that Bidlespacher's attorney filed to the Board of View's findings. (Doc. 32, ¶ 53.)

Nothing about any of these acts suggests that they were taken in the "clear absence of all jurisdiction." Issuing orders in any of various forms, making provisions for the gathering of evidence, and deciding whether or not to consider submissions from parties are all functions "normally performed by a judge," and in each instance alleged in the complaint, the persons involved were interacting with Anderson "in his judicial capacity."

12

*Gallas*, 211 F.3d at 768–69 (quoting *Stump*, 435 U.S. at 362). Whether Anderson was right or wrong to refuse to commit an order to writing, to appoint Mathers in particular as chairman of the Board of View, or to refuse to grant audience to counsel on a particular matter are all irrelevant to determining whether judicial immunity applies. *See id.* at 769 (quoting *Stump*, 435 U.S. 359; *Mireles*, 502 U.S. at 13) (noting that the commission of even "grave procedural errors" does not forfeit immunity, and focusing the inquiry on "the general nature of the challenged action" rather than "the judge's motive or the correctness of his or her decision"). All of the acts that Anderson is alleged to have committed are judicial acts; he is entitled to immunity.

### (2) Quasi-judicial immunity

Quasi-judicial officers—those who "perform functions closely associated with the judicial process"—are immune from suit for acts taken "in accordance with their duties or at the direction of a judicial officer." *Stout v. Naus*, No. 09-0380, 2009 WL 1794989, at *3 (M.D. Pa. June 23, 2009) (citing *Gallas*, 211 F.3d at 772–73; *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969)); *id.* (citing *Marcedes v. Barrett*, 453 F.2d 391 (3d Cir. 1971) (holding quasi-judicial immunity applicable to a clerk of courts, an adminsitrative assistant to the president judge, and a court reporter)).

The complaint alleges that defendant Way transferred plaintiff Blair's case to defendant Judge Anderson. (Doc. 32, ¶ 31.) Nothing else in the complaint makes out any factual claim about Way nor alleges that Way did anything. The mere transfer of a case is "closely associated with the judicial process," part of Way's duties as court administrator, and well within the range of activities for which quasi-judicial immunity is appropriate.

### (3) Conclusion

Because the only plausible reading of the complaint shows that the alleged acts of defendant Anderson were judicial in character, and that the sole alleged act of defendant Way was quasi-judicial and closely associated with the judicial process, it is recommended that judicial and quasi-judicial immunity be held applicable, respectively. It is further recommended that judicial immunity not be held applicable to defendant Brown solely on the grounds the complaint does not allege Brown to have committed any acts.

Although the preceding discussion provides adequate grounds for dismissal of all claims against Anderson, Brown, and Way, an analysis of the four counts in the complaint nonetheless follows and may serve as alternative grounds.

### (C) Count I

The legal standard for the Wickses' claim was thoroughly recited in the Court's order of February 2, 2010 (Doc. 27), granting dismissal of the original complaint; what immediately follows is substantially a repeat of the same recital.

The Wickses make their claim under 42 U.S.C. § 1983, which creates no substantive rights, but rather provides a remedy for infringement of rights established by other federal laws. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere . . . ."). The statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983 (West 2010). Recovery under § 1983 requires proving that "a person acting under color of state law" deprived the plaintiff of a "right secured by the Constitution and the laws of the United States." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). Because a § 1983 claim is predicated on the violation of a constitutional or statutory right, the first step in a § 1983 analysis is to "identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)) (internal quotation marks omitted). (*See also* Doc. 27, at 5 (providing the same standard for a § 1983 claim).)

Plaintiffs argue Count I under no particular legal theory; they simply claim that defendants Brown, Burd, and Way violated their First Amendment right of access to the courts. In the Court's order on the previous motions to dismiss in this case, the Court treated plaintiffs' substantially similiar First Amendment claim as a retaliation claim. (Doc. 27, at 5.) With no reason to treat plaintiffs' claim otherwise, the same approach will be used here.

A First Amendment retaliation claim requires a plaintiff to prove "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). A plaintiff pursuing an access-to-courts claim must also establish the "constitutional prerequisite" of actual injury. *Lewis v. Casey*, 518 U.S. 343, 351–52 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821–25 (1977)). Actual injury may consist of "loss or rejection of a legal claim," for example, or hindrance of a plaintiff's "efforts to pursue" a claim. *Oliver v. Fauver*, 118 F.3d 175, 177–78 (3d Cir. 1997) (citing *Casey*, 518 U.S. at 351).

In this case, the Wickses can satisfy at least the first of the three elements of a prima facie retaliation claim. The right of access to courts, as part of the right to petition the government for grievances, is protected by the First Amendment. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). But here their complaint falters. In order to establish the remaining two elements, the Wickses would need to have sufficiently alleged that defendants Brown, Burd, or Way had taken some retaliatory action against them that hindered their pursuit of a claim, such action being taken because the Wickses had pursued those claims in the first place. As discussed above in Part III.B.1, the complaint contains no allegations that Judge Brown did anything, and as for Way, alleges only that he transferred plaintiff Blair's case from Judge Butt to Judge Anderson, which has nothing to do with the Wickses. The complaint similarly lacks any allegations that Burd took any actions at all. All the complaint states is that Burd had an "adminstrative responsibility" for the Wickses' files—a conclusory statement not entitled to be presumed true—and that the Wickses' files were "lost." (Doc. 32, ¶¶ 14, 15, 25.) The complaint contains nothing to suggest who lost the files, when the files were lost, how the loss of the files was connected to the Wickses' use of the court system, or any action that Burd took or failed to take that resulted in or contributed to this loss of files.

The Wickses have not established that the loss of their files caused any actual injury to their ability to pursue their claims or that there is any causal link to the actions they filed in court and the loss of the files. Their reference near the end of Count I to "public corruption involving poker machines" does not rescue their case. (*Id.* at ¶ 68.) Because the Wickses have not established the second or third elements of a retaliation claim, it is recommended that Count I of the amended complaint be dismissed.

*(D) Count II*

In Count II, plaintiff Blair claims against defendants Anderson, Burd, and Way for what appears to be the same legal claim as the Wickses attempted in Count I. Summarizing from the preceding discussion, Blair must show (1) a constitutionally protected right, (2) retaliatory action that hindered Blair's efforts to pursue a claim, and (3) a causal link between the exercise of his right and the retaliatory action. As above, Blair can easily establish the first element; his access to the court system is constitutionally protected.

Similar to the Wickses, Blair fails to establish either retaliation or a causal link between the exercise of his right to access the courts and any alleged retaliation. According to the complaint, Way transferred Blair's case from Judge Butt to Judge Anderson. At a hearing on September 9, 2009, Anderson issued a bench order, but refused to issue a written order. The complaint makes reference to "the early papers of [Blair's] files" being missing from Prothonotary Burd's office for some unstated period of time (*id.* ¶ 35), but then indicates that "his 'missing papers' had been returned" (*id.* ¶ 39). There is no indication, either in the complaint or plaintiffs' briefs opposing dismissal, that Blair was deterred from exercising his right to access the courts in any fashion by Way transferring his case, Anderson refusing to issue a written order to accompany a bench order, or the loss (and recovery) of "early papers" by unknown parties. Nor is there any causal link shown between Blair's use of the courts and any of these defendants' actions.

In failing to establish elements two and three of his prima facie case, Blair has failed to make his right to relief anything more than purely speculative, and it is recommended that Count II of the amended complaint be dismissed.

*(D) Count III*

In Count III, plaintiff Bidlespacher claims against Anderson and Mathers for alleged violations of his First and Fourteenth Amendment rights. Bidlespacher's allegations essentially amount to an expression of outrage that his neighbor seeks a right-of-way over his land and has been subject to related legal proceedings. He asks the Court to hold that Judge Anderson's refusal to entertain his attorney's exceptions to a Board of View's findings, coupled with the fact that legal proceedings over the right-of-way have commenced, somehow amount to a properly stated claim of denial of access to the courts (again being read as a retaliation claim) and a denial of his right to due process.

Nothing in the complaint or related briefing even comes close to making conceivable, let alone plausible, how Judge Anderson's alleged refusal to hear Bidlespacher's attorney's exceptions constitutes a denial of access to the courts or an impairment of his right of redress, or how such refusal is causally connected to Bidlespacher's exercise of his rights.

The Fourteenth Amendment claim is also patently frivolous. The Fourteeenth Amendment prohibits state deprivations of life, liberty, or property without due process of law. *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984). The two-step analysis requires inquiring (1) whether the plaintiff's asserted interests are within the definition of "life, liberty, or property," and (2) whether the procedures afforded the plaintiff constituted due process of law. *Id.*; *accord Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Bidlespacher adequately asserts an interest in his property—here, real estate—but he has asserted no deprivation of this interest; rather, the complaint describes administrative proceedings concerning a right-of-way that have yet to conclude. Not only is there no deprivation, but Bidlespacher is in the middle of being afforded process regarding the possible right-of-way over his property.

Because Bidlespacher has failed to make plausible any right to relief, it is recommended that the claim against Judge Anderson in Count III of the amended complaint be dismissed.[6]

### (F) Count IV

Count IV, which purports to be by "all plaintiffs' [sic]" against Lycoming County and the 29th Judicial District of Pennsylvania,[7] alleges that these entities "maintain an unlawful custom of denying citizens . . . access to the local [c]ourt system." (Doc. 32, at ¶ 76.) This statement, the only one in the complaint that mentions the government entity Lycoming County at all, is squarely within the category of "bald assertions" and "legal conclusions" that courts have long rejected as improper pleading. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997). Moreover, if plaintiffs' claim is intended to be based on alleged behavior of state judges that sit in Lycoming County, plaintiffs should be reminded that the Pennsylvania Supreme court "has the sole power and responsibility to supervise the 'practice, procedure, and the conduct of all courts.' Neither the legislative branch nor the executive branch of government acting through an administrative agency may constitutionally infringe on this judicial prerogative." *First Judicial Dist. of Pa. v. Pa. Human Relations Comm'n*, 727 A.2d 1110,

---

[6]Because Mathers is not properly before the Court, the claim against him in Count III cannot be addressed. However, the complaint alleges only that Mathers was appointed to a Board of View by Judge Anderson (Doc. 32, ¶ 52), in which role Mathers seems to have made certain unspecified findings (*id.* ¶ 53 (referring to "the finding of defendant Mathers' findings [sic]")). Should the Court ever have the opportunity to consider the claim against Mathers directly, the undersigned Magistrate Judge suspects it is unlikely that these innocuous allegations will be found to state any claim showing entitlement to relief.

[7]As previously noted, the 29th Judicial District of Pennsylvania is not a party to this case, voiding any claims or allegations made against it here.

1112 (Pa. 1999). Lycoming County has no authority over the judges that sit within its boundaries; even if it were so inclined, Lycoming County would lack the power to maintain a custom of denying citizens access to the courts.

Because Count IV is both devoid of factual allegations and conceptually confused, it is recommended that this last count of the complaint be dismissed.

### (G) The categorical imperative

In an unusual and creative fit of legal argument, plaintiffs cite Immanuel Kant's categorical imperative in their briefs opposing dismissal. (Doc. 41, at 7; Doc. 42, at 8.) Quoth Kant: "Act only on that maxim whereby thou canst at the same time will that it should become a universal law." Immanuel Kant, Fundamental Principles of the Metaphysic of Morals (Thomas Kingsmill Abbott ed., Gutenberg Project 2005). Plaintiffs suggest that in this case, Kant's foundational moral principle prompts the question whether "any fair and honest judge" would tolerate the conduct as pleaded, if proven true. (Doc. 41, at 8.) This application of Kant's theory to the present case betrays a misunderstanding of Kant. Because it is now the Court that must decide whether to dismiss plaintiff's complaint, Kant's categorical imperative operates on which decision the Court makes, and the reasons why—not on the case that plaintiffs would like to think that their complaint establishes. The proper question, then, is whether it could be willed a universal law that a complaint like the one before the Court should or should not be dismissed.

Plaintiffs have presented the Court with an amended complaint that, more than simply being overrun with grammatical, typographical, and conceptual errors, has as its gravamen an ongoing series of conclusory statements barren of any factual content. From the complaint there emerges no coherent story, no sense of what actors committed which acts, and no hint that any of the defendants haled into court actually subjected plaintiffs to any legally cognizable injuries. Applying Kant's categorical imperative to the decision

*not* to dismiss the claims in the complaint, as plaintiffs urge, would result in an outcome analogous to the case of the despondent man attempting to universalize a rule allowing suicide in the face of despair: such a principle "would contradict itself," as the purpose of the legal system is not to allow a plaintiff with "a largely groundless claim" to "take up the time of a number of other people." Kant, *id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)) (internal quotation marks omitted). Kant's theories for an *a priori* basis of morality do not aid plaintiffs' case.

## IV. Conclusion

It is recommended, therefore, that defendants' motion to dismiss be GRANTED, and that plaintiffs' amended complaint be DISMISSED, with the exception of the claim in Count III against Daniel Mathers. It is further recommended that the Court provide plaintiffs with notice that they must provide Mathers with service satisfactory under Fed. R. Civ. P. 4 or risk dismissal of their complaint against him.

s/ William T. Prince
William T. Prince
United States Magistrate Judge

October 13, 2010